## US DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

05 AUG 22 PM 4:09

SHUCHEN SWISSHELM
7530 South Mingo Lane
Madeira, Ohio 45243

# 1:05 CV 553

    :

# J. WATSON

# J. BLACK

    Plaintiff          :

Vs               :

JOHN E. POTTER, POSTMASTER   :      COMPLAINT
GENERAL                       AND JURY DEMAND
1591 Dalton Street        :
Cincinnati, Ohio 45234

                    :

    Defendant

Now comes Plaintiff, by and through counsel, and for her Complaint avers the following:

### Parties

1. Plaintiff ShuChen H. Swisshelm is a citizen of the United States and the State of Ohio presently residing in Cincinnati, Hamilton County, Ohio.

2. Defendant John E. Potter, Postmaster General is the duly appointed Postmaster General of the US Postal Service ("Post Office"). The Postal Service maintains and operates numerous places of business in the Greater Cincinnati area, including the Cincinnati Bulk Mail Center at 3055 East Crescentville Road, Sharonville, Ohio, for that purpose.

## Jurisdiction and Venue

3.      This action for monetary damages and injunctive relief is brought pursuant to Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 USC β794

4.      Each of the discriminatory acts and practices alleged hereinafter occurred on the premises of the Cincinnati Bulk Mail Center in Hamilton County, Ohio, within the Southern District of Ohio.

## General Allegations

5.      Since February 5, 1994, the Post Office has employed Plaintiff as a mail handler at the Bulk Mail Center facility in Sharonville, Ohio. Initially, she was assigned to a position in the bundle sorting area.

6.      On May 2, 1994, while working second shift (Tour 3) in the bundle sorting area near the 115 Bundle Sorter machine, Hattie Rose ("Rose"), another employee whom Plaintiff barely knew, threatened her, grabbed at her clothing, kicked her shoe far away, and generally intimidated her. There was absolutely no provocation for this assault.

7.      In reaction to that unprovoked attack, Plaintiff became anxious, nervous and fearful that Rose might again take action against her,

8.      Shortly thereafter, on May 30, 1994, Plaintiff injured her back while lifting mail bags, causing her to miss work. She subsequently applied for workers compensation benefits and the Post Office immediately recognized her claim for the injury to her back.

2

9.  On July 5, 1994, Plaintiff's physician released her to return to work, but with certain restrictions on standing and lifting. When Plaintiff returned to work, she was placed on a limited-duty assignment in the loose mail area, a position that accommodated her medical restrictions. The loose mail area lies adjacent to the 115 Bundler Sorter machine, and thus placed Plaintiff in close proximity to Rose.

10. Shortly after Plaintiff's return to work, Rose again assaulted her. Through the intervention of a Union steward, Dan Hutzel, who convinced the shift supervisor to reassign her to the rewrap area, another light-duty position.

11. After this second attack, Plaintiff began undergoing psychiatric treatment, first with Frederick Moss, M.D. ("Moss") and sometime later with Marvin Pravda, M.D. ("Pravda"). Both Moss and Pravda diagnosed Plaintiff as suffering from "post-traumatic stress syndrome" as a result of the repeated assaults from Rose.

12. In October 1994, Plaintiff completed her transitional assignment and became a regular full-time employee.

13. Shortly thereafter, the Post Office reassigned Plaintiff to a position in the McAlpin Building, a separate facility with Ralph Jackson as Plaintiff's direct supervisor. He forced Plaintiff to work outside her doctor's restriction, exacerbating Plaintiff's existing injuries. (Grievance RR10-23-94). Then, in February 1995, the Post Office reassigned Plaintiff to the loose mail area, near the bundle sorting area where Rose still worked.

14. After this transfer Rose, knowing full well that her mere presence was stressful to Plaintiff, would frequently walk over to the Plaintiff's area and

3

loiter in the vicinity of Plaintiff's workstation. When Plaintiff complained to her supervisor, she was told nothing could be done about Rose's actions.

15.    Plaintiff, on her part sought to avoid both Rose and the 115 Bundle Sorter machine where the assault had occurred. In particular, because the central time clock was located immediately adjacent to the 115 unit, Plaintiff began to clock in and out at a side entrance in a different part of the plant.

16.    On August 5, 1995, Plaintiff reported to work at the start of her shift, but did not clock in because of a plant-wide fire drill. After the start of her shift, her supervisor, Patricia Barnhorst, approached Plaintiff and ordered her to clock in at the central time clock, near the 115 Bundle Sorter unit. When Plaintiff initially balked at using that particular time clock, Barnhorst became abusive. Confronted in this matter, Plaintiff became hysterical and had to be taken to the hospital from the Bulk Mail Center by ambulance.

17.    From August 5 to August 11, 1995, Plaintiff remained hospitalized at Jewish Hospital in Cincinnati, Ohio. On August 14,1995, Pravda submitted a letter Confirming that hospitalization, releasing Plaintiff to return to work on August 21, 1995, and ordering that she be immediately transferred to her former position in the rewrap area on first shirt for a periof of 4 months as an accommodation for her emotional disability.

18.    At or about this time, Plaintiff was suffering pains in her neck and back, which were diagnosed and treated by her chiropractor, who advised Plaintiff fhat she should avoid heavy lifting as part of her job duties, on account of this additional physical disability.

4

19.     On August 25, 1995, the Post Office refused Plaintiff's request on the grounds

that she had not followed proper procedures. Plaintiff's antagonist at this

point was Ralph Jackson, who was prejudiced against Plaintiff because of her

race and because of his inability to understand her spoken English. Mr.

Jackson informed the Plaintiff that she would be required to bid for the rewrap

position to which she had been earlier assigned as an accommodation for her

disability. Mr. Jackson further stated, "We cannot allow you to return to work

until you meet our requirements as a regular mail handler."

20.     On December 20, 1995, Plaintiff resubmitted her request for reinstatement

and transfer to the rewrap, first shift position,.this time to Robert Pflanz, the

General Manager of the Bulk Mail facility. Plaintiff never received a

response to that request.

21.     On January 15, 1996, Dr. Pravda again provided a letter to Plaintiff releasing

her to return to work and recommending that she be assigned to the rewrap

area. The next day, Plaintiff again submitted a request for a transfer to first

shift in accordance with Dr. Pravda's instructions. On January 24, 1996, the

Post Office, through Ralph Jackson, again denied her request.

22.     At this point, the Post Office apparently placed Plaintiff on unpaid leave.

Plaintiff, for her part, continued to push for her reinstatement because she

wanted to work. Between 1996 and 2000, on at least ten occasions, Plaintiff

requested that she be formally reinstated with accommodations for her

disabilities. On each such occasion, the Post Office, through Ralph Jackson,

refused either to reinstate Plaintiff or to accommodate her disabilities.

5

23.    Eventually on October 21, 2000, the Post Office, again through Mr. Everitt

Bradley, terminated Plaintiff because, after refusing to allow Plaintiff to return

to work for nearly six years, he claimed that she could not perform her

position.

24.    Plaintiff subsequently filed a grievance, asserting her termination was

discriminatory based upon her disabilities and her race.  Eventually, a

settlement was proposed whereby Plaintiff would be permitted to return to

work, subject to any medical conditions her physicians might impose.

Plaintiff did not like this settlement because it did not offer her back pay

for the period during which she was not permitted to work.  However, on

December 19, 2002, Plaintiff returned to work at the Bulk Mail Center.

25.    Since then, Plaintiff has worked in a loose mail position, second shift, at the

Cincinnati Bulk Mail Center.  By this time, Rose has been reassigned to

another shift.  The Post Office, however, has refused to acknowledge

Plaintiff's seniority or to make effective step increases in pay, by refusing to

include the time she was barred from coming to work, from August 24, 1995

to December 19, 2002, in the calculations of the length of her employment.

Thus, Plaintiff has been denied back pay for that period.

26.    On October 24, 2003, the Post Office suddenly determined it could no longer

accommodate Plaintiff's disability, and refused to allow her to return to work.

Specifically, the settlement of her grievance had said she could lift between 10

and 20 pounds, which in practice was interpreted to be a 15-pound limitation.

When Plaintiff requested that this informal limitation of 15 pounds be lowered

6

to 12 pounds, it was asserted that her request was a violation of the settlement agreement. On November 18, 2003, after Plaintiff resubmitted a doctor's form stating her restrictions, the Post Office reversed its position and allowed her to return to work.

27.     The actions recounted above constitute an "overarching policy" in place for nearly ten years, to harass and discriminate against Plaintiff because of her Mental and physical disabilities and because of her race.

28.     In March 2004, a fellow employee named Tom Ranken began pushing an All-Purpose Container (APC) into Plaintiff, including a fork lift, saying Plaintiff should not be working there because she could not speak clear English and he couldn't understand her. When Plaintiff complained to her supervisor, Nathan Pearson, about this, he did nothing. Therefore, in June 2004, Plaintiff filed charges of discrimination with the EEOC.

## Count One

29.     Plaintiff incorporates each and every allegation contained in the general Allegations contained in Paragraphs One through Twenty Eight (1-28) of this Complaint as if fully rewritten herein.

30.     Plaintiff suffers from both a physical impairment, neck and back pain, and a Mental impairment, post-traumatic stress disorder. Said conditions constitute "disabilities" as referenced in The Rehabilitation Act, 29 USC $\beta$ 794. Plaintiff can, with or without reasonable accommodation, perform the essential functions of the mail sorter position and therefore is an "otherwise" qualified individual with a disability as referenced in 29 USC $\beta$ 794.

31.  The Postal Service, through the actions described above, has engaged in systematic and continuous discrimination against Plaintiff on the basis of her disability, in violation of The Rehabilitation Act, 29 USC β 794.

32.  As the direct and proximate result of said disability discrimination, Plaintiff has suffered and continues to suffer damages, including the loss of employment and accompanying benefits amounting to a loss of "back pay" in excess of $100,000, and general compensatory damages in addition thereto.

### Count Two

33.  Plaintiff incorporates each and every allegation contained in the general allegations contained in Paragraphs One through Twenty Eight (1-28) of this Complaint as if fully rewritten herein.

34.  The Post Office's conduct set forth herein above, constitutes discrimination against Plaintiff on the basis of her race and national origin in violation of 42 USC β 2000e-2.

35.  As a direct and proximate result of said racial and national origin discrimination, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, the loss of employment, back pay and benefits, in an amount in excess of $100,000, and general compensatory damages in addition thereto.

**WHEREFORE**, Plaintiff demands judgment against the defendant John E. Potter, Postmaster General, on each cause of the action set forth above, as follows:

8

A. Compensatory damages in a amount sufficient to compensate Plaintiff for the discrimination set forth again, back pay and benefits, in amounts in excess of $100,000 to be fully determined at trial;

B. An award of the costs and expenses of this action, including reasonable attorney's fees; and

C. Such other relief, of a legal or equitable nature to which Plaintiff may be entitled in the premises.

## Jury Demand

Plaintiff demands jury trial of the within action.

William B. Singer (0019323)
Trial Attorney for Plaintiff
621 E. Mehring Way, #1609
Cincinnati, OH 45202
(513) 721-0778

9

## JURY DEMAND

Plaintiff demands jury trial of this action.

William B. Singer (0019323)
Trial Attorney for Plaintiff
621 E. Mehring Way, #1609
Cincinnati, Ohio 45202
(513) 721-0778

4