UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Shuchen Swisshelm,

    Plaintiff

    v.                                   Case No. 1:05cv553

John E. Potter,                        Judge Michael R. Barrett
Postmaster General,

    Defendant.

**OPINION & ORDER**

This matter is before the Court upon Defendant's Motion to Dismiss or in Alternative, for Summary Judgment. (Doc. 4) Plaintiff Shuchen Swisshelm filed a Memorandum in Opposition. (Doc. 9) Also before the Court is Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 13), and Defendant's Memorandum in Opposition thereto (Doc. 14).

**I.    FACTUAL BACKGROUND**

In 1994, Plaintiff began working as a mail handler in the Post Office's Bulk Mail Center facility in Sharonville, Ohio. (Doc. 1, ¶ 5) Plaintiff suffers from neck and back pain and post-traumatic stress disorder. (Id. ¶ 30) Plaintiff is Chinese-American. For reasons not relevant to the Court's analysis, Plaintiff was on leave from her position from 1996 to 2000. (Id. ¶¶ 21-22) As a result of a settlement of a grievance filed by Plaintiff, Plaintiff returned to work in December of 2002. (Id. ¶ 24)

On March 18, 2004, Plaintiff was involved in an incident with her co-worker, Tom Renken. (Id. ¶ 28; Doc. 5, Ex. A) Plaintiff claims that Renken pushed a piece of

equipment into her and hurt her arm. (Doc. 5, Ex. B, Vol. I Hearing Tr. at 11) Plaintiff claims that Renken told her that told her that she should not be working there because she was crazy. (Id.) Plaintiff claims that Renken said that Plaintiff did not speak English and he could not understand her. (Id.) Plaintiff claims that she went to her supervisor, Nathan Pearson, but Pearson did nothing. (Id.) Plaintiff states that when she went back to her work area another employee, Rodman Smith, told her to move because the space was "too tight" for her to work there. (Id.) Plaintiff states that she felt threatened. (Id.)

Pearson's recollection of the incident differs from that of Plaintiff. Pearson claims that Plaintiff came to him that evening and reported that Renken had said "you shouldn't be here." (Vol. I Hearing Tr. at 93) Pearson told Plaintiff that she and Renken did not have to like each other but they need to work in their areas and process the mail. (Id. at 94-95) Pearson then instructed Plaintiff to return to her area and intended to investigate when he finished what he was doing. (Id.) Pearson then heard Plaintiff "getting loud" and calling Renken "an asshole." (Id. at 34, 95) Pearson told Plaintiff that her behavior was inappropriate and to return to work. (Id.) Plaintiff refused to return to work until her union shop steward arrived. (Id. at 35-37, 95-97) Pearson then went to find the shop steward. (Id.) When Pearson returned, Plaintiff was sitting at her work station and crying. (Id.) Pearson walked Plaintiff to the union office, and Plaintiff later went home. (Id.) Pearson later took statements from the employees involved in the incident. (Id. at 100) Renken admitted that he told Plaintiff that he could not understand her, that she should not be in that area, and that she was crazy. (Doc. 5, Ex. C, Vol. II Hearing Tr. at 132-37) Renken explained that he did have difficulty in understanding Plaintiff, that he had set up the work area for another employee he was training, and it was too small of an area for all of them.

(Id.) Renken was sent to diversity training as a result of the incident. (Id. at 137)

When Plaintiff returned to work, Defendant offered Plaintiff a position in another area, which she refused. (Vol. I Hearing Tr. at 116) After a few days, Plaintiff reported that Renken was driving a forklift past her very fast, "ignor[ing her] existence. (Id. at 21, 116) Because Renken's bid assignment did not allow him to be moved, Defendant moved Plaintiff to another "loose mail" area where she does the same work. (Id. at 22-23) Plaintiff stated that she felt "a lot safer" working in the new area. (Id. at 24) There have been no other incidents with Renken since Plaintiff moved. (Id. at 23)

Plaintiff claims disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq*.; and race and national origin discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq*.

II.  **ANALYSIS**

   A.  **Motion for Leave to Amend**

Plaintiff filed her Motion for Leave to Amend on March 24, 2006, after Defendant filed its Motion to Dismiss/Motion for Summary Judgment. Plaintiff seeks to add the National Postal Mail Handlers Union ("the Union") as a defendant. Plaintiff explains that she was a member of the Union during her employment, and the Union is aware of the grievances filed by Plaintiff and her factual allegations. Plaintiff states that the Union will not be prejudiced.

Defendant opposes the amendment, arguing that the amendment would be futile, and would cause it prejudice.

Federal Rule of Civil Procedure 15(a) provides:

A party may amend the party's pleading once as a matter of course at any

> time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court explained that a motion to amend generally should be granted:

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."

The Court finds that Plaintiff's proposed amendment would be futile.  The Court's finding applies regardless if Plaintiff's amendment is construed as bringing a hybrid claim for breach of the duty of fair representation, or a claim of discrimination under Title VII or the Rehabilitation Act.

Hybrid claims alleging breach of contract by the Postal Service and breach of the duty of fair representation by a postal workers' union may properly be brought in federal court under the Postal Reorganization Act, 39 U.S.C. § 1208(b) (the "PRA").  This section of the PRA tracks the language in section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).  The PRA is "an analogue of Section 301(a) of the LMRA." *Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100*, 698 F.2d 250, 254 (6th Cir. 1983).  Therefore, courts apply Section 301 case law to cases arising under the PRA.  *Id.*  Accordingly, a "hybrid" action by a postal employee is subject to a six-month statute of limitations.  *Kaiser v. U.S. Postal Service*, 785 F.Supp. 648, 655 (E.D.Mich. 1992), *citing DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169-172 (1983).

Such a claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action. *Wilson v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 83 F.3d 747, 757 (6th Cir. 1996), *citing Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 578 (6th Cir. 1987), *cert. denied*, 486 U.S. 1033 (1988).

Plaintiff's claim against the Union appears to be based on the Union's signing of a settlement agreement with the Postal Service. Plaintiff alleges that she learned of the settlement agreement on January 31, 2003. (Doc. 13-2, ¶ 5) Plaintiff filed her Complaint on August 22, 2005, and did not file her Motion for Leave to Amend until March 24, 2006. (Doc. 13) Because Plaintiff has not filed her claim within the applicable statute of limitations, Plaintiff's claim of breach of duty of fair representation against the Union would be futile.

Before filing a Title VII action, a federal government employee must first timely exhaust all administrative remedies. *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991).[1] The procedural requirements of Title VII have been incorporated into the Rehabilitation Act. 29 U.S.C. § 794a (a)(1).

---

[1] A federal employee must contact the Equal Employment Opportunity Commission (EEOC) within 45 days of the alleged discriminatory event. 29 C.F.R. § 1614.105(a)(1). Generally, counseling with an EEOC counselor must be completed within 30 days of this precomplaint. 29 C.F.R. § 1614.105(d). If the matter has not been resolved, the EEOC counselor must notify the employee in writing of his right to file a formal complaint with the agency. *Id.* An employee has 15 days from receipt of this "Notice of Final Interview" to file a formal complaint with the agency that allegedly discriminated against the complainant. *Id.* Upon notice of a final agency decision, the employee may either file an appeal to the EEOC or a civil action in federal court. If the employee elects to file a civil action, he must do so within 90 days of receiving notice of the agency's final action, or after 180 days after filing his formal complaint if the agency has failed to render a decision. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a) and (b). If the employee chooses to appeal to the EEOC, he must file that appeal within 30 days of the agency's final decision. 29 C.F.R. § 1614.402(a). Thereafter, the employee may file suit in federal court within 90 days of receipt of the EEOC's final decision on the appeal, or after 180 days after filing the appeal if the EEOC has not issued a final decision. 29 C.F.R. §§ 1614.408(c) and (d).

There is no evidence that the Union was named in Plaintiff's EEOC charge. (See Doc. 5, Ex. A) Failure to name a union in an EEOC charge bars a subsequent Title VII suit against that union. As the Sixth Circuit has explained:

> Filing an EEOC charge against a party is a necessary prerequisite to suit. It is well settled that a party not named in an EEOC charge may not be sued under Title VII unless there is a clear identity of interest between it and a party named in the EEOC charge or it has unfairly prevented the filing of an EEOC charge.

*Jones v. Truck Drivers Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984) (citations omitted). There is no clear identity of interest between the Postmaster General and the Union. There is no evidence that the Union unfairly prevented the filing of Plaintiff's EEOC charge. Therefore, Plaintiff's Title VII and Rehabilitation Act claims against the Union would be futile. Accordingly, Plaintiff will not be granted leave to amend her Complaint.

**B.     Standard of Review**

If matters outside the complaint are considered by the Court in ruling on a motion to dismiss, then the motion must be considered as a motion for summary judgment. *Cincinnati Ins. Co. v. Hertz Corp.*, 776 F.Supp. 1235, 1238 (S.D.Ohio 1991), *citing Sims v. Mercy Hospital of Monroe*, 451 F.2d 171 (6th Cir. 1971). Because this Court will consider the documents submitted by Defendant, and because Plaintiff has not objected, this Court will consider Defendant's Motion as being one for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

### C. Exhaustion of Administrative Remedies

Defendant argues that all of Plaintiff's claims have not been raised administratively. A federal employee alleging discrimination must follow mandatory administrative procedures before filing a complaint in federal court. *Brown v. Gen. Services Admin.*, 425 U.S. 820, 823-33 (1976).

Plaintiff completed the pre-complaint process, and filed her formal complaint with the Postal Service on June 25, 2004. In her formal complaint, Plaintiff stated that the discriminatory acts were as follows:

> My co-worker, Tom Renken, who is a white male, pushed an APC into me and made disparaging and discriminatory remarks about my ethnicity. My supervisor, Nathan Pearson, took his side, ignored my complaint and forced me to stay and work in a hostile environment, threatening to walk me out from my job if I refused.
>
> Seven days after the incident, I returned to work and Mr. Hugh Martin, the night manager moved from SPBS Loose Mail Unit to the Sack and Sorter Unit. He said that when two people cannot get along, they should be separated and that was the justification for the reassignment. This is contrary to another incident where two employees couldn't get along in the Rewrap Unit. Julia Caulton and Lori Gehring, a white female, have difficulty getting along, yet they are still working in the same unit.

(Doc. 5, Ex. A)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was

held on June 17, 2005 and continued on July 22, 2005. (Doc. 5, Exs. B, C) Plaintiff filed her civil action in this Court on August 22, 2005. On September 15, 2005, the ALJ issued his decision finding no discrimination; and on October 26, 2005, the Postal Service issued its notice of final action implementing the decision of the ALJ. (Doc. 5, Ex. D)

An employee may file a civil action within 90 days of receiving notice of the agency's final action, or after 180 days after filing the formal complaint if the agency has failed to render a decision. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a) and (b).[2] Here, Plaintiff filed her civil action before the Postal Service issued the notice of its final action, but more than 180 days had elapsed since the filing of her formal complaint. Therefore, the filing of Plaintiff's civil action was timely.

However, Defendant argues that Plaintiff's allegations relative to her light duty assignment in November of 2003 have never been raised administratively. Defendant argues that the only allegations which have been raised administratively are those related to the incident involving Tom Renken. These allegations are found in paragraph 28 of the Complaint. Plaintiff appears to concede that these allegations are the only allegations

---

[2]Section 1614.407 provides:

A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:

> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;
>
> (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken . . .

which are properly before the Court.[3]

### D. Discrimination claims

In her Complaint, Plaintiff alleges claims of disability discrimination in violation of the Rehabilitation Act; and race and national origin discrimination in violation of Title VII. In her response to Defendant's Motion, Plaintiff states that she is "concentrating" on Count Two of the Complaint (the Title VII claim) and does not argue that her claim in Count One (the Rehabilitation Act claim) should not be dismissed. The Court will read this to mean that Plaintiff concedes that summary judgment is appropriate on this claim. Therefore, Plaintiff's only remaining claim is her claim for race and national origin discrimination under Title VII. Plaintiff maintains that she was subject to a hostile work environment in violation of the Act.

As the Supreme Court has explained, under the framework of the Court's decisions in *Faragher v. Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), there are two categories of hostile work environment claims: (1) harassment that "culminates in a tangible employment action," for which employers are strictly liable and (2) harassment that takes place in the absence of a tangible employment action, to which employers may assert an affirmative defense. *Pennsylvania State Police v. Suders*, 124 S.Ct. 2342, 2352 (2004).

---

[3]Plaintiff does not respond to Defendant's argument regarding administrative exhaustion. Interestingly, the Court notes that Plaintiff previously filed a Complaint in this Court (1:04cv399, *Swisshelm v. John Potter*) which is identical with two exceptions (1) it does not contain the allegations regarding Tom Renken; and (2) it states that Plaintiff filed two charges based on the allegations in the Complaint with the EEOC, one on April 8, 2003 and the other on January 27, 2004. The Complaint explains that on March 31, 2004, there was a final agency decision issued on the first charge, and Plaintiff requested the issuance of a final agency decision without a hearing on the second charge. Plaintiff voluntarily dismissed this action on January 13, 2005. However, Plaintiff would be barred from including these charges in her current Complaint because more than ninety days passed between the final agency action and the filing of the Complaint.

In the first category, a tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2353, *quoting*, *Ellerth*, 524 U.S. at 761. In the second category, a plaintiff may establish a violation of Title VII by proving that the sex discrimination created a hostile or abusive work environment without having to prove a tangible employment action. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986).

It appears that Plaintiff's claim falls into the second category because she has not alleged that she was subject to a tangible employment action.[4] In order to establish this type of hostile work environment claim, an employee must show the following: (1) the employee is a member of a protected class, (2) the employee was subject to unwelcomed harassment, (3) the harassment was based on the employee's race and/or national origin, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior. *Williams v. General Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999); *Moore v. KUKA Welding Systems & Robot Corp.*, 171 F.3d 1073, 1079 (6th Cir. 1999); *see also Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) ("The elements and burden of proof are the same, regardless of the discrimination context in which the claim arises.").

Harassment affects a "term, condition or privilege of employment" if it is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and creates an abusive working environment. *Moore,* 171 F.3d at 1079, *citing*, *Harris v. Forklift Sys., Inc.*,

---

[4] Plaintiff was relocated to a different mail sorting area, but there is no indication that Plaintiff had different responsibilities or any change in her benefits.

510 U.S. 17, 21-22 (1993). Both an objective and subjective test must be met:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris*, 510 U.S. at 21-22.

In determining whether there was a hostile or abusive work environment, courts are to look to the totality of the circumstances. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998), *citing*, *Harris*, 510 U.S. at 23. This Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether–taken together–the reported incidents make out such a case." *Williams*, 187 F.3d at 562. Unless extremely serious, isolated incidents of harassment will not amount to discriminatory changes in the terms or conditions of employment actionable under Title VII. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000); *see also Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (explaining that courts must "distinguish between harassment and discriminatory harassment," because the latter is required for a Title VII hostile work environment cause of action).

Plaintiff's hostile work environment claim is based primarily upon the two incidents involving Renken. Plaintiff also argues that Smith's telling her to move was harassing.

Even if the Court concluded that Renken's comments that Plaintiff should not be "working here" and that he could not understand Plaintiff because she did not "speak English" were based on the Plaintiff's race and national origin, the Court is unable to conclude that this harassment affected a term, condition, or privilege of employment. The frequency of the discriminatory conduct was minimal. Plaintiff only points to two incidents. The Court also finds that the severity of the harassment was minimal because the statements made by Renken were only tangentially related to Plaintiff's race and national origin. While there was an element of the harassment which was physically threatening or humiliating, and Plaintiff left work that night, the Court finds that the incidents involving Renken do not make out a case of hostile work environment. Renken's behavior may have been inappropriate and insensitive, but Title VII does not establish a "general civility code" for the workplace. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that complaints attacking the ordinary tribulations of workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing are insufficient to obtain relief under Title VII).

In addition, the Court finds that this is not a case where the employer failed to take reasonable care to prevent and correct any harassing behavior. For an employer to be liable for the discriminatory harassment of an employee by a coworker, the harassed employee must show the employer both (1) knew or should have known of the harassment and (2) failed to take prompt and appropriate corrective action. *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001). Generally, "a response is adequate if it is reasonably calculated to end the harassment." *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999). Here, Defendant moved Plaintiff to another work area

and sent Renken to diversity training as a result of the incident. Plaintiff does not argue that these actions were reasonably calculated to end the harassment, and has stated that she feels safer working in the new area. In addition, there have been no other incidents since Plaintiff has been moved. Plaintiff's only argument is that Pearson did not take action on the night of the first incident between her and Renken. However, the Court notes that Pearson investigated the incident and took statements from other employees. Therefore, the Court finds that Plaintiff has failed to establish a hostile work environment claim, and as a result, Defendant is entitled to summary judgment on Plaintiff's Title VII claim.

### E. Conclusion

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 13) is **DENIED**;

2. Defendant's Motion to Dismiss or in Alternative, for Summary Judgment (Doc. 4) is **GRANTED**; and

3. This matter shall be **CLOSED** and **STRICKEN** from the docket of this Court.

**IT IS SO ORDERED.**

          */s/ Michael R. Barrett*
          Michael R. Barrett, Judge
          United States District Court